UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ANTHONY L. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:09-cv-101-WGH-RLY |
| ) | |
| TAMMIE POPE, ) | |
| PAULA MITCHELL, ) | |
| CRAIG GEORGE, ) | |
| CHRIS MITCHELL, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Anthony Smith, sued Defendants Tammie Pope, Paula Mitchell, Chris Mitchell, and Craig George (collectively, "Defendants"), employees with the Indiana Department of Corrections (IDOC), in their individual capacities under 42 U.S.C. § 1983 ("section 1983"). Smith alleged that by subjecting him to unsafe hard labor, Defendants violated his Eighth Amendment rights by subjecting him to work that constituted cruel and unusual punishment (Plaintiff's Complaint at 12-13), and his First Amendment rights by retaliating against him after exercising constitutionally protected conduct. (Plaintiff's Amended Complaint at 9-12, 22). Defendants have moved for summary judgment. (Docket No. 103). Plaintiff filed a response on October 5, 2012. (Docket No. 109). No reply brief was filed. For the reasons set forth below, their motion is **GRANTED**.

## I. Factual Background and Procedural History

Smith was an inmate at IDOC's Branchville Correctional Facility ("Branchville"). (*See, e.g.*, Affidavit of Tammie Pope ("Pope Aff.") ¶ 11). He had previously worked in the kitchen and as a recreation worker at Branchville, but was fired from both those jobs. (Deposition of Anthony L. Smith ("Smith Dep.") at 17-20). After being fired as a recreation worker, in December 2008, Smith met with Tammie Pope, a Correctional Case Worker, who informed Smith that, despite his protest, he would be working on the "stump crew." (Pope Aff. ¶¶ 11-16; Smith Dep. at 35-37). The stump crew was responsible for removing the stumps of approximately 30 felled trees from Branchville. (Pope Aff. ¶ 14). When the stump crew was utilized, approximately 25 inmates would be assembled to work. (Smith Dep. at 54). The crew was given coats, coveralls, "toboggans," and safety glasses, although sometimes there were not enough safety glasses for each inmate. (*Id.* at 55, 61). The crew was given shovels, pickaxes, and axes. (*Id.* at 54).

Smith worked on the stump crew no more than five times between January 1 and March 11, 2009. (Smith Dep. at 43, 51).[1] In February 2009, Smith met with Pope about the informal grievance he filed regarding his assignment to the stump crew. Pope informed Smith that she was not responsible for his assignment. (Pope Aff. ¶¶ 17-19). On March 9, the temperature was between 39 and 60 degrees, and on March 11, the

---

[1] Some portions of the record indicate Smith was placed on the stump crew four times between January and March 2009. (*See, e.g.*, Smith Dep. at 87-88). However, it is undisputed that two of those times were March 9 and 11, 2009. (Smith Dep. at 51).

2

temperature ranged from 33 and 57 degrees.  (Defendants' Ex. 2 at 1, 6).  Smith was reinstated as a recreation worker in April 2009.  (Smith Dep. at 23-24).

On June 16, 2009, Paula Mitchell, then the Branchville law librarian, told Smith in front of Craig George, the recreation supervisor, that he could not use the law library during his working hours, as he had been doing previously.  (Affidavit of Paula Mitchell ("Paula Mitchell Aff.") ¶ 15).  Mitchell repeated this message to Smith on June 23, 2009, and he was fired from his position as a recreation worker the next day.  (*Id.* ¶¶ 16-17).

Smith filed his initial claim on July 31, 2009, against several Branchville employees, including Tammie Pope, in their individual and representative capacities under section 1983.  (Docket No. 1).  He alleged violations of his Fourteenth Amendment procedural due process and that the Branchville employees subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights.  (*Id.* at 12-21).  Smith sought injunctive relief, compensatory damages, and punitive damages (*id.* at 6), but conceded his claim for injunctive relief was moot once he was transferred to the Putnamville Correctional Facility in May 2010.  *Smith v. Peters*, 2012 WL 266950, at *1 (S.D. Ind. Jan. 27, 2012); (Smith Dep. at 14).  Smith later amended his complaint to include 11 additional Defendants, including Paula Mitchell, Chris Mitchell, and Craig George.  (Docket No. 11 at 1-2).  Smith alleges that Paula Mitchell and George had violated his First Amendment rights by retaliating

3

against him for his grievances and complaints when they restricted his access to the law library. (*Id.* at 9-13). He stated that Paula Mitchell was "very rude, used unprofessional language, and even threatened to send Smith to the hole." (*Id.* at 9). He also claims that George admitted the ban on workers using the law library during work hours was an upcoming change, yet Smith was still not allowed to use the law library. (*Id.* at 11). Finally, he alleges that Chris Mitchell conspired with George to restrict Smith's library time "by eliminating idle prisoners' use of request slips for additional time in the law library." (*Id. at 22*).

Smith's case was initially dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A (Docket No. 12); that ruling was subsequently reversed and remanded by the Seventh Circuit with respect to Smith's First and Eighth Amendment claims. *Smith v. Peters*, 631 F.3d 418 (7th Cir. 2011). On remand, Smith limited his action to Eighth Amendment claims against Gil Peters, Richard Newton, and Pope and First Amendment retaliation claims against George, Paula Mitchell, and Chris Mitchell. *Smith* 2012 WL 266950, at *1. Claims against all Defendants in their official capacities were dismissed, and claims against Newton and Peters in their individual capacities were dismissed as well. *Id.* at *2-3. The remaining Defendants—Pope, George, Paula Mitchell, and Chris Mitchell—now move for summary judgment. Additional facts will be supplied as necessary.

4

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325, 106 S.Ct 2548, 91 L.Ed.2d 265 (1986). The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Stated differently, only disputes over material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will preclude the entry of summary judgment. *Id.* at 248. When determining whether a genuine issue of material fact exists, the court views the record and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255 (citation omitted).

### B. 42 U.S.C. § 1983 Standard of Review

To sustain a civil rights claim against state officials under section 1983, a plaintiff must demonstrate the following: "(1) [Smith] held a constitutionally protected right, (2) he was deprived of that right in violation of the Constitution,

(3) [defendants] intentionally caused that deprivation and (4) [defendants] acted under color of state law." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993) (internal quotation omitted). Smith must allege that each defendant was directly responsible for depriving him of a constitutional right. *Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). A claim cannot be sustained on the grounds of vicarious liability or *respondeat superior*. *See, e.g.*, *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### III. Discussion

#### A. Does Smith have an actionable claim against Pope for Eighth Amendment violations?

Smith alleges that Pope, acting under color of law and with deliberate indifference, violated his Eighth Amendment protection against cruel and unusual punishment by classifying him "to the unsafe, hard labor job of the [stump crew], thereby exposing Smith to an unreasonable risk of serious harm." (Plaintiff's Complaint at 12). He further alleged that by assigning him to stump crew without providing adequate training, tools, or safety and protective gear, Pope acted with deliberate indifference by ignoring an obvious danger. (*Id.* at 13). Finally, her failure to intervene to keep Smith off stump crew on March 9 and 11, 2009, after Smith filed an informal grievance in February 2009, constituted reckless disregard. (*Id.*). Smith claims to have suffered severe emotional and mental pain and suffering and pain resulting

6

from working in freezing temperatures, which he claims "transform[ed] the task into physical torture." (*Id.*).

For a prisoner to adequately state a claim of cruel and unusual punishment from deliberate indifference under section 1983, a plaintiff must allege facts which could prove that: (1) the injury is "sufficiently serious" to deprive him of the "minimal civilized measures of life's necessities" (objective component); and (2) the defendants in question acted with a "sufficiently culpable state of mind (subjective component)." *Farmer v. Brennan*, 511 U.S. 825, 832, 834, 110 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotations omitted). Defendants allege that Smith can prove neither of these elements.

### 1. Did Smith suffer an actual or sufficiently serious threatened injury?

Defendants claim that *Rhodes v. Chapman* (452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)) dictates the court's approach to whether an injury has been suffered in a deliberate indifference claim. Prison conditions must not wantonly or unnecessarily inflict pain, nor can they be "grossly disproportionate to the severity of the crime warranting imprisonment." *Id.* at 347. However, restrictive and harsh conditions do not themselves create an actionable Eighth Amendment violation claim (*id.* at 347, 352), and neither does an inmate's preference for clerical rather than manual labor. *See, e.g.*, *Jackson v. O'Leary*, 689 F. Supp. 846 (N.D. Ill. 1988). Moreover, courts are to be highly deferential to legislatures and prison officials in allowing them to handle their internal affairs. *U.S. ex rel. Miller v. Twomey*, 479 F.2d 701, 713

n.25 (7th Cir. 1973). Therefore, Smith must show that his work on stump crew caused him actual injury or threatened him with severe injury to survive summary judgment on his Eighth Amendment violation claim.

Smith claims to have suffered abraded hands and blisters on his hands as a result of his work on stump crew. (Plaintiff's Complaint at 13). The Seventh Circuit has already ruled that Smith's blisters could have been caused by "handling stump removal tools without gloves" or could have been "precursors to or consequences of frostbite." *Smith v. Peters*, 631 F.3d 418, 420 (7th Cir. 2011). Smith argues that the "law of the case" doctrine makes this holding binding on the trial court on remand. (Plaintiff's Response at 35-36). The law of the case doctrine states that once an "appellate court expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). Smith is correct that the law of the case doctrine applies to this case on remand, but is incorrect about its scope. The Seventh Circuit stated that "the allegations of the complaint are sufficient to preclude dismissal for failure to state a claim." *Smith*, 631 F.3d at 420. The standard for an adequately pleaded claim to survive summary judgment (stated *supra*) is much higher than the "plausible claim for relief" standard to survive a motion to dismiss at the initial pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Therefore, the law of the case doctrine merely prevents Defendants from relitigating whether Smith has pleaded a

plausible claim for relief; it has no bearing on whether Smith's claim survives summary judgment.

Pope claims that stump crew was never so dangerous, either in the work or in the outside conditions in which it took place, to constitute a serious threat of injury. (Pope Aff. ¶¶ 21, 26). She also states that the safety and other equipment Branchville provided kept Smith reasonably safe from injury either from the work or the outside conditions. (Pope Aff. ¶¶ 20, 22). Therefore, the work was not dangerous or exceedingly difficult, and "Pope and the prison officials did not inflict wanton or unnecessary pain on Plaintiff." (Defendants' Memorandum at 15-16). However, Smith has produced his deposition testimony, in which he claimed that the safety training was inadequate, he did not have gloves or coveralls every time he was on stump crew, and that the type of tools being used (shovels and pickaxes) without adequate training created a hazardous work environment. (Smith Dep. at 53-56, 58-59, 61-62). Without documentation of training protocols or procedures on how safety equipment is distributed, the court agrees with Smith that it is at least a disputed fact as to whether his work conditions caused his injuries. (Plaintiff's Response at 41 (citing *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam)).

As to the issue of whether the injury was so severe as to deprive him of "the minimal civilized measures of life's necessities" (*Farmer*, 511 U.S. at 834), the court takes note of the Seventh Circuit's *dicta*, in which Judge Posner stated "[o]ur prison system is not the gulag" (*Smith*, 631 F.3d at 420) and

9

refused to hold that the allegations of blisters could not constitute a plausible claim for relief under the Eighth Amendment. (*Id.*). However, Smith concedes that the injuries he suffered on March 9 were minor abrasions and blisters (Smith Dep. at 69, 87; Plaintiff's Memorandum at 35) and that he suffered no injury his first two days on stump crew. (Smith Dep. at 60-61, 65-66). While he states that the injuries threatened were sufficiently serious (Plaintiff's Response at 35), he fails to cite a case where threatened severe injuries were enough for an Eighth Amendment claim to survive summary judgment.

Smith cites *Berry* for the proposition that the Eighth Amendment applies to prisoners if they "are compelled to perform physical labor which is beyond their strength, endangers their lives or health, or causes undue pain." 39 F.3d at 1057. On the only two dates that Smith recalls specifically working on the stump crew (March 9 and 11), the temperature was well above freezing (Defendants' Ex. 2) and he was provided adequate equipment and safety goggles, although no gloves (Smith Dep. at 67-70). Smith's claim that stump crew had been implemented by Pope's supervisor, Donna Carnegie, as punishment for prisoners who quit or got fired from their jobs (Smith Dep. at 28-29), even taken as true, does not itself create a persistent threatened injury.

Smith's claims that he was not provided with safety goggles every time, that he was not given adequate training, and that Pope did not accurately account for his lack of experience with shovels and pickaxes in assigning him to stump crew, combined with a lack of response from Defendants (Plaintiff's Response to Interrogatories at 4, ¶¶ 1-4), creates a dispute as to whether his

10

health was endangered by working on stump crew.  However, the risk to a prisoner's future health must be *unreasonable*.  *Henderson v. Sheahan*, 196 F.3d 839, 846-47 (7th Cir. 1999) (emphasis added).  Smith was moved from Branchville to Putnamville in May 2010 (Smith Dep. at 14), more than one year after the last time he worked on stump crew.  His initial complaint was not filed until more than four months after his last stint on stump crew.  At most, he worked on stump crew on four or five occasions during a four-month period.  Based on these facts, the court cannot conclude that there was an unreasonable threat to Smith's future health.  Because, as Smith concedes, the injuries he suffered were minor, the court concludes that Smith did not suffer the sufficiently serious actual or threatened injury required for his Eighth Amendment claim against Pope to survive summary judgment.  *Farmer*, 511 U.S. at 834.

### 2. Did Pope act with a sufficiently capable state of mind?

Even assuming *arguendo* that Smith had suffered a sufficiently serious actual or threatened injury, he would still have to prove that Pope intentionally caused him to be deprived of his Eighth Amendment rights.  *McNabola*, 10 F.3d at 513.  This can be shown through either intentional acts (*see DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000)) or through deliberate indifference (*see Townsend v. Fuchs*, 522 F.3d 765 (7th Cir. 2008)).  To sustain a claim of deliberate indifference, Smith would have to show that Pope "knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk

by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773.

Smith alleges that Pope knew of the dangers of stump crew, especially during the winter, yet still assigned him to stump crew over Smith's protestations, an inherently and unreasonably dangerous activity, without adequate training or protective gear. (Plaintiff's Response to Interrogatories at 4 ¶¶ 1-4)). He further claims that Pope knew that stump crew was designed as punishment for workers who got fired from other jobs, and threatened him to "throw him in the hole" if he did not show up for work. (Plaintiff's Response to Interrogatories at 4 ¶¶ 1-2; Smith Dep. at 28-29).

Even drawing all reasonable inferences in Smith's favor, as the court is required to do at this stage, the court finds Smith's deliberate indifference claim to be misplaced. Pope states, and Smith does not dispute, that she informed Smith in February 2009 that the decision to place inmates on stump crew rested with her supervisor, Donna Carnegie, not with Pope herself. (Pope Aff. ¶¶ 13, 18). Pope's undisputed job description does not include anything about ensuring safe work conditions (Pope Aff. ¶¶ 8-9); at most, her role was advisory about whether a worker should or should not be assigned to a job. Even if there are disputed issues of material fact as to whether Pope knew that stump crew was inherently dangerous or whether Smith had the occupational background or physical ability to work on stump crew (Plaintiff's Response to Interrogatory at 4 ¶¶ 1-2; Pope Aff. ¶ 15), there is no dispute that Pope is not the responsible party. Smith also did not designate any evidence that Pope

failed to follow proper training protocol. Thus, she could not have acted with a sufficiently culpable mind to constitute deliberate indifference. Smith's argument fails on this element as well, and Pope's motion for summary judgment as to whether she violated Smith's Eighth Amendment rights must be granted.

### B.  Does Smith have an actionable claim for retaliation?

Smith alleges that Paul Mitchell, George, and Chris Mitchell at various times conspired to restrict his access to the law library and deprive him of his job as a recreation worker in retaliation for his imminent lawsuit against Branchville employees concerning stump crew.  (Plaintiff's Amended Complaint at 9-12, 22).  These actions, he claims, violated his First Amendment rights.

In a retaliation claim, a prisoner must establish that he was engaging in protected conduct and his protected conduct was a motivating factor behind the prison officials' retaliatory conduct. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).  A motivating factor is "a consideration present to [Defendant's] mind that favors, that pushes him toward action." *Hasan v. United States Dep't of Labor*, 400 F.3d 1001, 1006 (7th Cir. 1996).  To survive summary judgment, Smith must affirmatively tie the Defendants' retaliatory actions to his engaging in protected conduct. *Stagman v. Ryan*, 176 F.3d 986, 1001 (7th Cir. 1999).

Smith claims that the law of the case doctrine also applies in his First Amendment retaliation claims.  He opines that since the Seventh Circuit did hold that the facts pleaded presented a plausible claim for retaliation (*Smith*,

13

631 F.3d at 421), the Defendants would be precluded from relitigating that issue on remand. (Plaintiff's Response at 44-45). However, like with Smith's Eighth Amendment claims, the standard for a claim surviving summary judgment is much higher than surviving a motion to dismiss. Smith must show that there are material facts in dispute or triable issues that would prevent Defendants from receiving judgment as a matter of law. Smith has pleaded connected but somewhat distinct allegations against the three Defendants.

### 1. Paula Mitchell

Smith accuses Paula Mitchell of harassing him as he attempted to use the law library on February 28, 2009, and conspiring with George on June 16, 2009, to restrict his privilege of extra time in the law library in retaliation for his constitutional claim about stump crew work and subsequently filing a grievance against Mitchell for harassment. (Plaintiff's Amended Complaint at 9-10). Smith claims the restricted use of the law library caused him to be treated differently than similarly situated recreational workers. (*Id.* at 10). He claims that it was understood that recreation workers were allowed to use recreational facilities (e.g., gym, library, and law library) during the first 50 minutes of their one hour shift, since they only needed to work the last 10 minutes. (Smith Dep. at 99-100). Smith claims that the law library was the only recreational facility that recreation workers were not allowed to use during their work hour, and so Smith was the only recreation worker being deprived of using his preferred recreational facility during work hours. (Plaintiff's

14

Memorandum at 48). This, he claims, constitutes sufficient circumstantial evidence of retaliatory conduct that sustains his summary judgment burden. (*Id.* at 47 (citing *Long v. Teachers' Retirement Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)).

Smith does not cite, and the court cannot find, any case that supports the proposition that vulgar or rude language by a prison employee can by itself sustain a claim of retaliation. While Paula Mitchell does not deny that she used vulgar language, and the Seventh Circuit does not appear to have ruled directly on this issue, several other circuits that have addressed this issue have disallowed similar claims. "Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979). In *Oltarzewski v. Ruggiero*, the Ninth Circuit held that absent a complete deprivation of law library access or harassing or threatening behavior by the prison official, allegations of vulgar language would not satisfy a claim brought under section 1983. 830 F.2d 136, 138-39 (9th Cir. 1987). Smith does allege that Paula Mitchell threatened to "send Smith to the hole" while Smith was doing legal research. (Plaintiff's Amended Complaint at 9). However, Smith does not claim that he was deprived of use of the law library, and more importantly, he makes no affirmative showing that Paula Mitchell's comment was in direct response to his decision to file a grievance about the stump crew. Smith offers no more than the assertion that she knew he planned to sue her coworkers. (Plaintiff's Response to Interrogatories at 5 ¶¶ 6-7). This failure to build a causal

connection between Smith's protected conduct and Paula Mitchell's alleged threatening speech means Paula Mitchell's motion for summary judgment on the issue of harassment must be granted.

Smith's claim that Paula Mitchell and George conspired to restrict Smith's use of the law library on June 16 in retaliation for his filing of grievances regarding the stump crew and Paula Mitchell's harassment is similarly unavailing. Paula Mitchell states that "Plaintiff was fired for failure to comply with the prison work rules, and not because he filed grievances" and "I did not retaliate against Plaintiff Smith due to his filing of grievances." (Paula Mitchell Aff. ¶¶ 20-21). Smith does not state when his grievance against Paula Mitchell was filed, but admits that he was allowed to use the law library during his working hours when he worked as a recreation worker between April 2009 and June 16. (Plaintiff's Amended Complaint at 9-10). "The inference of causation weakens as the time between the protected expression and the adverse action increases" (*Oest v. Illinois Dep't. of Corr.*, 240 F.3d 605, 616 (7th Cir. 2001)), and Smith does not explain why Paula Mitchell and George waited two months to restrict his access if they had retaliatory intent. Smith's claim that Paula Mitchell convinced George to fire him as a recreation worker (Smith Dep. at 103) suffers from the same lack of explanation. Absent some causal link, along with an explanation as to why Paula Mitchell and George waited so long to retaliate, there is no triable issue. Paula Mitchell's motion for summary judgment is therefore granted in whole.

### 2. Craig George

Smith alleges that George, as the Branchville Recreation Coordinator, retaliated against him for filing a grievance against him and Paula Mitchell and planning to file a suit regarding the constitutionality of stump crew. (Plaintiff's Amended Complaint at 11-12). He did this first by restricting Smith's use of the law library during work hours on June 16 and 23 and then by terminating him as a recreation worker on June 24. (*Id.*). Smith claims that when George told him he could not use the law library during his work hours on June 16, George said this was part of upcoming changes to the law library. (*Id.* at 11). Smith states that George never said similar restrictions were in place for the other places that recreation workers would use during their work hours, Smith was one of three recreation workers (out of 30 total) who used the law library (*id.*), and that other recreation workers were allowed to use the library during their work hours. (Plaintiff's Response at 46). Therefore, he claims, this restriction was directed at him in response to his grievance and pending lawsuit in violation of his First Amendment rights. (Plaintiff's Amended Complaint at 11).

As with his claims against Paula Mitchell, Smith has failed to tie George's decision to restrict him from using the law library during his work hours to Smith's exercise of protected conduct. *Stagman*, 176 F.3d at 1001. Like the plaintiff in *Oltarzewski* (830 F.2d at 138), Smith was not completely deprived of use of the law library, nor were his personal recreation hours at the law library restricted. (Affidavit of Craig George ("George Aff.") ¶ 18). He simply

17

states that his *extra* time at the library was restricted. (Plaintiff's Amended Complaint at 11). He offers no evidence to rebut George's valid stated reason for not allowing him to use the law library—that Smith needed to be working during his work hours. (*Id.*; George Aff. ¶¶ 13-15). Moreover, despite stating that the restriction on the law library was being applied to him solely and prospectively, Smith offers no evidence that other recreation workers were allowed to use the law library during their work hours after June 16, 2009. Therefore, he has not proved any retaliatory action, much less connected it to his exercise of First Amendment rights. George's claim for summary judgment on this claim is therefore granted.

Smith further alleges that George terminated him in retaliation for his grievances (including one against Paula Mitchell and George on June 19 for restricting his law library time). (Plaintiff's Amended Complaint at 12). Smith claims that the timing and circumstances surrounding his termination on June 24 (immediately following his reduction in hours at the law library) show a retaliatory intent against Smith for engaging in protected conduct. (Plaintiff's Response at 48). While circumstantial evidence can be used to sustain a retaliation claim, Smith does not offer any evidence to rebut George's statement that Smith was fired as a recreation worker for his "failure to comply with the prison work rules, not for filing grievances." (George Aff. ¶ 19). The firing happened just one day after Smith again used the law library during working hours. (George Aff. ¶¶ 15-16). This suggests George's reason for terminating him was valid and not retaliatory. In the absence of any evidence to the

18

contrary, George's motion for summary judgment on the termination retaliation claim must be granted as well.

### 3. Chris Mitchell

Finally, Smith claims that Chris Mitchell, while working as law librarian and Recreation Leader (Affidavit of Chris Mitchell ("Chris Mitchell Aff.") ¶¶ 5-6), conspired with George to further reduce his library time by stopping the practice of allowing idle prisoners to request additional time in the law library. (Plaintiff's Amended Complaint at 22). Smith claimed that due to a change in the recreational schedule and being unable to find work at the prison, his law library time had been reduced from 15 hours per week to four. (*Id.*). This reduction, plus Chris Mitchell not allowing idle prisoners to use request forms for extra time in the law library, combined to deprive him of any time in the law library outside his recreation period. (*Id.*). This was allegedly in retaliation for the grievances filed against George and Paula Mitchell, Chris Mitchell's wife. (*Id.*).

While the court is concerned that Chris Mitchell did not address these accusations in his affidavit, this concern is outweighed by Smith not even addressing this claim in his brief. Thus, the court is left to determine solely on the basis of the complaint whether a reasonable trier of fact could infer that Chris Mitchell conspired with George to restrict Smith's law library time in retaliation for the grievances filed. The court concludes it could not. Smith does not allege that the changes in recreation schedule, job classification, or stopping the use of request slips was not a prison-wide policy. While the

19

timing of the decision to stop allowing idle prisoners to request more time in the law library—just two days after Smith attended the evening law library session (Plaintiff's Amended Complaint at 22)—may be suspicious, Smith needs more than suspicious timing to survive summary judgment. He must make an affirmative showing that Chris Mitchell's actions were connected to the grievances filed against Paula Mitchell and George. He has failed to do so, and Chris Mitchell's motion for summary judgment must be granted.

## IV. Conclusion

For the foregoing reasons, the motions for summary judgment by Defendants Tammie Pope, Paula Mitchell, Craig George, and Chris Mitchell are all **GRANTED**. Judgment consistent with this entry shall now ensue.[2]

**SO ORDERED** this 6th day of December, 2012.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Wade J. Hornbacher
INDIANA ATTORNEY GENERAL
wade.hornbacher@atg.in.gov

Betsy M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

John Andrew Goodridge
John Andrew Goodridge Law Office
jagoodridge@att.net

---

[2] Defendants' Motion to Strike Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Docket No. 110) is hereby dismissed as moot.